Jones *v.* Weigley, Appellant.

Argued April 10, 1929.

Before TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Budd B. Boose,* and with him *Norman T. Boose.* of *Boose & Boose,* for appellant, cited: Franklin Sugar Refining Co. v. Eiseman et al., 290 Pa. 486; Parry v. First National Bank of Lansford, 270 Pa. 556; Weiner & Kurtzberg v. Osnofsky, 92 Pa. Superior Ct. 143; Root v. Republic Acceptance Corp., 279 Pa. 55.

*Clarence L. Shaver,* and with him *Clarence Lippel,* for appellee, cited: Morris & Bailey Steel Co. v. Bank

of Pittsburgh, 277 Pa. 81; Helfenstein v. Line Mountain Coal Co., 284 Pa. 78; Jamestown Iron & Metal Co. v. Knofsky, 291 Pa. 60; Vierling v. Baxter et al., 293 Pa. 52.

Opinion by Cunningham, J., July 2, 1929:

The action below was trespass in which Minnie M. Jones alleged that Harry E. Weigley had wrongfully converted her Flint automobile to his own use; the verdict was in her favor in the sum of $414; Weigley has appealed from the judgment entered against him on the verdict.

. Several material facts were not controverted at the trial, viz: That Mrs. Jones, residing in Cumberland, Md., had purchased the car from Weigley, an automobile dealer at Meyersdale, Pa., in October, 1924; paid for it in full and procured a certificate of title in her name from the Commissioner of Motor Vehicles of the State of Maryland; and that Weigley, in June, 1926, sold and delivered this car, at Meyersdale, to one Boyer, receiving from Boyer an old Maxwell car and $400 in cash. The value of the Maxwell car was disputed: Weigley contended that it was worth only $18, the price at which he subsequently disposed of it, and that he had made repairs to the extent of $186 upon the Flint car before selling it to Boyer. Mrs. Jones admitted owing $212.85, borrowed, as hereinafter stated, upon the strength of her ownership of the car, but asserted that the Maxwell car was worth $300 and accordingly sued for $487.15. Weigley's defense was that at the time he sold the Flint car to Boyer he had full title thereto and was under no obligation to account to Mrs. Jones for any part of the proceeds. The court below properly turned the case upon the question whether Mrs. Jones had, under all the evidence, parted with her title.

We gather from the pleadings and evidence that the

respective contentions of the parties were these: Some time after Mrs. Jones had purchased the car it was injured in a wreck, necessitating repairs at a cost of about $160, and for that purpose it was taken by her to the Nash agency in Cumberland, and later stored by her at the West Side Garage. Being desirous of borrowing money to pay for the repairs and for other purposes, Mrs. Jones' version is that in the fall of 1925 she applied, at the suggestion of Weigley, to one George Stern, trading and doing business at Frostburg, Md., as the Co-operative Finance Company, for various loans. One of these loans was obtained in October, 1925: the amount was $125, of which $100 was given her in cash and the balance retained by Stern as a financing fee; the loan was to be repaid in monthly instalments of $25 each. As security she assigned in blank and delivered to Stern her certificate of title to the car, which she was then storing at the West Side Garage. Other loans were made to her from time to time by Stern, some of which were repaid, but in the spring of 1926 she was indebted to his company in the sum of $212.85, no part of which was ever paid by her, and she was in default for several of the monthly instalments. Her testimony was to the effect that she called Weigley by telephone at his place of business in Meyersdale and told him that she was unable to pay the overdue instalment; that Weigley thereupon agreed to make this payment for her but nothing was said about the title to her car; that about a month later she learned it had been removed, at the instance of Stern, from the garage at which she stored it to the garage of the Columbia Sales Company in Cumberland and had been taken from there to Meyersdale by Weigley. She testified further that she then called up Weigley who admitted that he had the car, and upon that occasion, and later at her home, stated that her car was worth $700 or $800 and that he could get

more for it than she could; and that Weigley expressly agreed to sell it for her. It seems to have been established by the testimony that Weigley went to Stern's place of business at Frostburg, paid him the $212.85 due from Mrs. Jones, had his name inserted in the assignment of the Maryland certificate of title which she had executed in blank, removed the automobile from the garage of the Columbia Sales Company at Cumberland to his own place of business at Meyersdale and procured, through the assignment of the Maryland title, a Pennsylvania certificate of title in his name, all of which Mrs. Jones testified was without her knowledge and consent.

The contention and testimony of Weigley, on the other hand, was that the transaction between Mrs. Jones and Stern was not as stated by her; that, in fact, when she made the loan of $125, in addition to assigning her title certificate in blank, she executed, under seal, in the presence of a witness, D. Hugh Nolan, a bill of sale, dated October 28, 1925, in which she bargained and sold to Stern her Flint touring car. The bill of sale purports to have been acknowledged by her on the day of its date before the said Nolan as a notary public. Weigley further contended that on the same day Mrs. Jones executed a "Maryland conditional sale agreement" between Stern as the seller and herself as the buyer for the Flint car for the consideration of $125, to be paid in five monthly instalments of $25 each. Under this agreement the title was to remain in the seller until the purchase price had been fully paid and it was provided that if the buyer should default the seller might, without any demand or notice, take possession of the car and all rights of the buyer should cease and determine. Weigley denied that he ever agreed to sell the car for Mrs. Jones and denied that he got possession of it by paying her indebtedness to Stern. His version was that Mrs. Jones failed

to make the monthly payments provided for in the conditional sales agreement and that Stern, in April, 1926, pursuant to its terms declared a forfeiture, and through one of his agents took possession of the car and had it removed to the garage of the Columbia Sales Company. He also testified that in June, 1926, he bought the car from Stern for $212.85, enough to make Stern whole; that Stern delivered to him the Maryland certificate of title with his name inserted as assignee, and the Columbia Sales Company turned the car over to him.

Under the evidence the car never was in the physical possession of Stern at Frostburg, nor did he ever have a certificate of title, or an assignment thereof, for it in his own name. Mrs. Jones executed the assignment of her Maryland certificate in blank in the fall of 1925; Weigley's name was filled in as the assignee when he paid Stern the $212.85 early in June, 1926; the paper contains what purports to be an acknowledgment of the assignment before D. Hugh Nolan as notary, in which he certifies, over his signature, that on June 3, 1926, Mrs. Jones "personally appeared" and made oath that the matters set forth in the assignment were within her personal knowledge and were true as therein set forth. Nolan was a clerk for Stern and his admissions with respect to this acknowledgment indicate extreme laxity in the performance of his official duties and probably weakened the confidence of the jury in his testimony. Mrs. Jones denied that she was in Frostburg on June 3, 1926, had any conversation with Nolan by phone at that time, or knew anything about the purported acknowledgment or the insertion of Weigley's name as the assignee. Nolan admitted that Mrs. Jones did not appear before him as certified in his acknowledgment but claimed that he communicated by telephone with someone at Cumberland, whom he believed to be Mrs. Jones, and told her

what had been written in the assignment. He admitted that he was not positive that the person to whom he talked was the plaintiff.

The issue therefore centered around the alleged bill of sale of October 28, 1925, by which Mrs. Jones is alleged to have transferred all her title in the car to Stern through whom alone Weigley claimed title. Mrs. Jones denied having signed either this bill of sale or the conditional sales contract from Stern to her of the same date. Nolan testified that he saw her sign both papers. This issue of fact was fairly submitted by the trial judge to the jury; they were instructed that "if she signed the bill of sale and delivered it to Mr. Stern if she did that, thereby he acquired a legal title and a sale by him to the defendant was legal; title vested in the defendant and he had a right to sell it and use the proceeds without accounting to the plaintiff, and your verdict would be in these words: 'We find in favor of the defendant.' " The jurors, as they had power to do, accepted the testimony of Mrs. Jones, rejected Nolan's, and found against the validity of the bill of sale. The other issue submitted to the jury, if they should find Mrs. Jones did not sign the bill of sale, was the ascertainment of the value of the automobile the day Weigley took it into his possession. Here again the evidence was conflicting but there was evidence which if believed by the jury would sustain the verdict.

Three of the five assignments of error relate to the refusal of binding instructions for defendant and the denial of his motions for judgment n. o. v. and for a new trial. It is clear from what we have said that binding instructions would not have been proper and there was therefore no error in denying defendant's motion for judgment n. o. v.; nor are we persuaded that he has shown any substantial ground for a new trial. The remaining assignments charge error in

overruling defendant's supplemental affidavit of defense in lieu of a demurrer to plaintiff's amended statement, and errors in the charge. It is contended on behalf of appellant that the amended statement did not set out a good cause of action because it attempts to plead a contract by appellant to sell the car and also charges him with a tort in its conversion.

In the earlier portions of the statement plaintiff set forth her version of her transactions with Stern and defendant's promises to pay him the instalment then due and sell the car for her account; the concluding paragraphs charge that defendant, without plaintiff's knowledge, removed the car from Cumberland to Meyersdale, there sold it to Boyer, and refused to account to her for the proceeds. We cannot say that, upon the facts averred, the statement shows, as "a question of law," that the plaintiff is not entitled to recover. The chief complaint with respect to the charge is that it was inadequate in that the trial judge failed to submit to the jury, as an issue entirely aside from that arising under the alleged bill of sale, the question whether the execution by plaintiff of the assignment in blank of her certificate of title and its delivery to Stern indicated an intention upon the part of plaintiff to transfer the title of her car to him.

As we read this record there is no basis for this criticism of the charge. Stern neither inserted his name as assignee nor made any effort to procure a certificate of title under the assignment; he and Weigley stood upon the bill of sale as transferring plaintiff's title; we have already referred to the manner in which it was attempted months later to make Weigley the assignee of the certificate. Moreover, if counsel for appellant desired specific instructions upon this matter, it should have been brought to the attention of the trial judge when he asked at the conclusion

of the charge whether there was "any request for further charge." As we find no reversible error in this record the several assignments are overruled.

Judgment affirmed.